### PAGE v. HARDEMAN et al. (No. 6716.)

(Court of Civil Appeals of Texas. Austin. Feb. 27, 1924. Rehearing Denied March 26, 1924.)

Mines and minerals ⬥=58—Oil lease void for impossibility of identifying land.

Oil lease covering a tract of 109 acres *held* void as so uncertain, even with the aid of extrinsic evidence, as to be impossible to locate on the ground.

Appeal from District Court, Caldwell County; M. C. Jeffrey, Judge.

Suit by Holland Page against W. D. Hardeman and others. Judgment for defendants, and plaintiff appeals. Affirmed.

C. F. Richards and Nye H. Clark, both of Lockhart, and Leon Green, of Austin, for appellant.

R. B. Ellis, of Lockhart, and White, Wilcox, Graves & Taylor, of Austin, for appellees.

McCLENDON, C. J. Appellant, Holland Page, who will be referred to as plaintiff, brought this suit against appellees, W. D. Hardeman and wife Georgie Hardeman, Thomas Hardeman, and wife Carrie Hardeman, E. J. Hardeman, L. H. Hardeman, J. A. Hardeman, and Jourdan Hardeman, who will be referred to as defendants Hardeman, and the United North & South Oil Company, Incorporated, which will be referred to as the oil company, to establish the validity of an oil lease executed by defendants Hardeman, on December 21, 1921, in favor of plaintiff, covering 109 acres of land in Caldwell county, and to cancel an oil lease executed on December 22, 1921, by defendants Hardeman, in favor of the oil company, covering the same tract of land.

The case was tried to a jury, and at the close of plaintiff's case the trial court, upon motion of all defendants, rendered a judgment in their favor upon an instructed verdict. From this judgment plaintiff has perfected an appeal to this court, assigning as error the action of the trial court in directing a verdict against him.

Upon careful consideration of the case, we have reached the conclusion that the judgment of the trial court should be affirmed, upon the ground that the description in plaintiff's oil lease, as applied to the land in question, is so uncertain as to render it impossible to locate the land on the ground, and for that reason plaintiff's lease is void. In view of this conclusion, we deem it unnecessary to consider or state the other questions involved in the appeal, and we shall only set forth those matters of pleading and evidence which have bearing upon the controlling question in the case.

By his original and supplemental pleadings and trial amendment, the plaintiff sought to establish against the defendants Hardeman an oil lease, executed by said defendants in plaintiff's favor on December 21, 1921, covering a tract of land of 109 acres situated in Caldwell county, Tex., a part of the M. G. Dikes Survey, and described as follows:

"Situated on the east side of the M. Hardeman tract of land same consisting of 218 total acreage, the 109 acres of land being bounded on the north by the T. C. Gideon and Tom Fields tracts of land, on the east by the Tom Fields and Nelle Kimball tracts of land, on the south by a tract of land commonly known as the J. C. Duke tract of land, and so named on the map of Caldwell county and sometimes called the Motte Day tract of land, and on the west by the Rafael Rios and Fermine Rios tracts of land."

The trial amendment alleges that, at the time the lease was executed, it was the understanding and agreement that each lessor owned a separate tract of land embodied in the 109 acres described in the lease, and it was agreed by the lessors and lessee that

each of the former leased and conveyed the mineral rights in and under his or her separate portion of the 109 acres, respectively, and that the instrument should have been so drawn, but that by mistake of the scrivener the lease shows on its face to be a joint lease contract instead of a several lease contract, as intended by the parties, and there is a prayer for reformation of the lease accordingly. There is nothing, however, in the trial amendment, or in any of the pleadings, to show just what portions of the 109 acres or the amount of acreage each of the lessors own.

It is unnecessary to further state the pleadings in the case.

In so far as the record discloses, whatever title defendants Hardeman had in the land in question was deraigned in the following manner:

In 1855, David F. Brown made a bond for title, covenanting to convey to Wm. S. Smith 272 acres in Caldwell county, the description of which, omitting bearing trees and other unessential matters, is as follows: Beginning at the most eastern corner of 200 acres sold to I. P. Ratliff; (1) thence N. 50 degrees E. 1144 vrs.; (2) thence N. 50 degrees W. 727 vrs.; (3) thence N. 40 degrees E. 242 vrs.; (4) thence N. 40 degrees W. 1,000 vrs.; (5) thence S. 50 degrees W. 1,386 vrs.; (6) thence with the N. E. line of Henry league and Ratliff's tract S. 40 degrees E. 1,665 vrs. to beginning.

In 1857, Smith and wife conveyed the land described in the bond for title to Harwood and McKean, as trustees.

In 1870, Harwood for the trustees conveyed the same land to Jourdan Hardeman, who appears to have been the father of at least two of the Hardeman defendants, W. D. and Thomas.

In 1883, the will of Jourdan Hardeman was probated in Caldwell county, Tex. By the terms of this will, he gave his wife, Mary Ann Hardeman, a life estate in all his property, with remainder in equal shares to their children, and stipulating that his son Abraham Hardeman should share alike "with the other heirs." Mary Ann Hardeman died intestate in 1911.

In 1917, the unsold portion of the tract described in the bond for title, referred to as containing 218½ acres, was partitioned as follows: Two-fifteenths each to Tom, E. J., John, and R. A. Hardeman, and Elijah Houston, and five-fifteenths to W. D. Hardeman. The 218½-acre tract is described by setting out the field notes of the 272 acres substantially as contained in the bond for title, except that the fourth call is omitted, less, however, 72 acres sold to Watt. Thomas and 100 acres sold to Thomas Hardeman, said excepted tracts being described by reference to recorded deeds, the description in which is nowhere given in the record before us. The 218½-acre tract was partitioned as follows:

Tract No. 1, of 27 acres, to Thomas Hardeman, with field notes as follows: Beginning at N. W. corner of the 218½-acre tract; (1) thence N. 50 E. 746 vrs. to N. W. corner of Tom Fields' land; (2) thence S. 40 E. 186 vrs., stake on Fields' S. W. land; (3) thence S. 50 W. 456 vrs.; (4) thence S. 40 E. 92 vrs., the N. E. corner of Carrol Hardeman tract; (5) thence S. 50 W. 290 vrs., N. W. corner of said tract; (6) thence N. 47 W. 277 vrs. to the place of beginning.

Tract No. 2, of 26 acres, to E. J. Hardeman, with field notes as follows: Beginning at S. E. corner of tract No. 1; (1) thence S. 50 W. 456 vrs.; (2) thence S. 40 E. 300 vrs., stake on N. E. line of Carrol Hardeman tract; (3) thence N. 50 E. 534 vrs., stake on Tom Fields' S. W. line; (4) thence N. 56½ W. 250 vrs.; (5) thence N. 40 W. 54 vrs.

Tract No. 3, of 64½ acres, to W. D. Hardeman, with field notes as follows: Beginning at S. E. corner of tract No. 2; (1) thence S. 50 W. 534 vrs. to the S. W. corner of tract No. 2, stake in N. E. line of Carrol Hardeman tract; (2) thence S. 40 E. 600 vrs.; (3) thence N. 50 E. 686 vrs.; (4) thence (N.) 56½ W. 610 vrs. to beginning.

Tract No. 4, of 40 acres, to John Hardeman, with field notes as follows: Beginning at S. E. corner of tract No. 3; (1) thence S. 50 W. 686 vrs. to S. W. corner of tract No. 3; (2) thence S. 40 E. 240 vrs. to Ell corner of Carrol Hardeman tract; (3) thence N. 50 E. 138 vrs.; (4) thence S. 40 E. 104 vrs. on N. E. line of Carrol Hardeman tract; (5) thence N. 50 E. 626 vrs. to S. W. line of Geo. Kimball tract; (6) thence N. 49 W. 350 vrs. to beginning.

Tract No. 5, of 29½ acres, to R. A. Hardeman, with field notes as follows: Beginning at S. E. corner of tract No. 4; (1) thence S. 50 W. 405 vrs.; (2) thence S. 40 (E.) 370 vrs. to N. W. line of Duke tract; (3) thence N. 50 E. 503 vrs. to S. E. corner of said 218½-acre tract; (4) thence N. 40 W. 273 vrs.; (5) thence N. 50 W. 124 vrs.; (6) thence N. 49 W. 121 vrs. to beginning.

Tract No. 6, of 31½ acres, to Elijah Houston, with field notes as follows: Beginning at N. W. corner of tract No. 5; (1) thence S. 50 W. 221 vrs. to S. W. corner of tract No. 4, on N. E. line of Carrol Hardeman tract; (2) thence S. 40 E. 130 vrs., the most S. E. corner of Carrol Hardeman tract; (3) thence S. 50 W. 420 vrs. to S. W. corner of Carrol Hardeman tract; (4) thence S. 40 W. 240 vrs. to S. W. corner of said 218½-acre tract; (5) thence N. 50 E. along Duke's N. W. line 641 vrs. to S. W. corner of tract No. 5; (6) thence N. 40 W. 370 vrs. to beginning.

It will be observed that tracts Nos. 1 and 3 were set apart respectively to Thomas and W. D. Hardeman, two of the lessors and defendants in this suit. Defendant J. A., or Johanna, Hardeman, is shown by the evi-

dence to be the mother of defendants, E. J., L. H., and Jourdan Hardeman. Just what connection they have with the land described in this petition is not shown. It is conceded in the pleadings and the evidence that the defendants Hardeman who constitute all of the grantors in plaintiff's lease, were not all of the owners of the several tracts set aside in the partition.

It will be further observed that the partition decree relates to the entire 218½ acres, and sets aside in severalty a specific portion to each of the six parties to the partition proceeding. From the field notes in the record of the original 272-acre tract and the several tracts set aside in the partition, we have constructed the following plat:

It will be noted that the field notes of tract No. 5 do not close, but this defect may be disregarded as of no importance to our present inquiry.

The evidence substantiated the allegations of the trial amendment to the effect that the agreement between plaintiff and defendants Hardeman was that each of said defendants was leasing in severalty the particular tract owned by him in the 109 acres covered by the entire lease. The only evidence other than that above by which the 109 acres was sought to be identified was excluded over defendants' objection, and error assigned thereon. If the evidence excluded was sufficient to identify the land described in the lease, then its exclusion was manifestly error; but if, taking all the evidence introduced and that excluded, the description in the lease is void for uncertainty, then the trial court's

judgment necessarily should be affirmed. We, therefore, set out the substance of all the excluded testimony bearing upon this issue.

Plaintiff offered to prove by himself that he knew that W. D., Thomas, and E. J. Hardeman and the other negroes, heirs of M. Hardeman, owned 218 acres of land, a part of the M. G. Dikes survey, in the southwestern portion of Caldwell county.

Plaintiff offered to prove by W. E. McDowell, county clerk of Caldwell county:

"That he was familiar with what is known as the M. Hardeman tract of land; that he knows it is a part of the M. G. Dikes survey in Caldwell county, Tex.; that the same is bounded on the north by the T. C. Gideon and Tom Fields tracts of land, and on the east by Tom Fields and Nell Kimball, and on the south by the J. C. Duke tract, sometimes called the Mott Day tract of land; that he has read and is familiar with the partition suit No. 5830, styled John Hardeman, Minor, by Next Friend, William Kelley, et al. v. Harriett Houston et al.; that he is familiar with the tracts of land described in the exhibit attached to the certified copy of the district court of Caldwell county in said proceedings, which exhibit described the land already awarded in said partition suit to Thomas Hardeman, E. J. Hardeman, W. D. Hardeman, Jno. Hardeman, R. A. Hardeman, and Elijah Houston, and that said several tracts of land as described in said exhibit by metes and bounds is the 218 acres of land known as the M. Hardeman tract of land; that all of said land is in the M. G. Dikes survey in Caldwell county; that he is well acquainted with all of the owners of said land and knows that they own no other land in the M. G. Dikes survey in Caldwell county, except such as was partitioned to them in said partition suit."

The exhibit to the partition decree, referred to by this witness, is not in the record before us. The reference to the 218 acres as the M. Hardeman land is not explained, but it is clear that it is the land partitioned to the children of Jourdan and Mary Ann Hardeman.

It is contended by defendants that the expression in the lease, "109 acres on the east side of the M. Hardeman tract of land," means that the 109 acres lies to the east of the M. Hardeman tract. Plaintiff, on the other hand, contends that this quotation means that the 109 acres is "on" the M. Hardeman tract, and on its east side; that, is, the eastern portion or eastern one-half. We think it clear that the expression "on the east side," when taken in connection with the evidence in the case, means a part of the Hardeman tract and on its east side.

It is further contended by defendants that the description of the 109 acres is void on its face. This contention, we think, is not tenable. The boundaries of the 109 acres are given by reference to other designated tracts of land. If it were shown that these tracts were well known by the names given, and that they bounded the 109 acres as stated in

the lease, then we think the description would be sufficient. It is clear, however, that this is not the case. The only evidence showing the location of the tracts described as bounding the 109 acres is that of Mc-Dowell, which was excluded. The evidence of this witness relates to the boundaries of the entire 218 acres known as the M. Harde-man tract, and he only gives the names of the tracts bounding the 218 acres on the north, east, and south, omitting any reference to the west boundary. The boundaries thus given coincide with the north, east, and south boundaries of the 109 acres given in the lease.

It is clear, therefore, that the only means which the record affords of identifying the leased land is that portion of the lease which describes it as "109 acres on the east side of the M. Hardeman tract of land."

If the grantors owned or claimed by undivided interests the entire 218 acres, and that tract was in the form of a square or parallelogram, it might be reasonable to infer that the parties intended that the tract be divided by a line drawn through its center, parallel to its east and west lines, and to convey the east half. If we had this situation, a different question would be presented—a question upon which it is unnecessary to express any opinion. An examination of the plat, however, will show that the 218 acres is in a very irregular shape. Its northern and southern lines are parallel, but its eastern and western lines are decidedly broken. It would be possible, it is true, for one versed in the subject to draw a line at right angles to the northern and southern lines of the tract so as to divide it and leave 109 acres on the east side, but there is nothing in the record to show that the parties intended a division of this character. When we take into consideration the fact that the lessors own in severalty the subdivisions evidenced by the partition, it becomes manifest that they had in mind no such intention. To divide the 218-acre tract so as to effect all of the lessors equally, it would be necessary to draw a north and south line through each subdivision so as to bisect it. This method could be pursued with reference to subdivisions numbered 1 to 4, inclusive, but would be impossible with Nos. 5 and 6. No single line drawn from north to south could possibly divide both of those subdivisions, and they would have to be treated as one tract; in which event all of subdivision 5 and one acre additional taken off of subdivision 6 would be included in the lease, and all of subdivision 6, except one acre, would be excluded. Such a division would be manifestly absurd, and it would be the barest surmise, unwarranted by any evidence, to assume that the parties so intended.

From the testimony admitted and excluded, it seems quite plain to us that the parties were dealing with a tract of land, the boundaries of which were understood by them to be reasonably well defined, in which the several lessors and others who did not join owned separate well-defined tracts, which taken together composed the entire 109-acre tract. The consideration to be paid was $218, which was to be divided between the lessors upon the basis of $2 per acre according to their several holdings. There is no evidence that any of the parties intended to lease a part of a larger tract owned by him; but the clear inference from the evidence is that each party presumed he was leasing his entire holding. There is no evidence whatever that there had been any sales or subdivisions of any of the several tracts set aside in the partition. So far as the record shows the ownership continued the same, although it may be inferred that the interests of some of the parties to the partition had passed by descent to their heirs. It is manifest that the lease itself, which was drawn by or under the direction of plaintiff, only contemplated covering 109 acres off the east side of the 218 acres divided in the partition. The excluded evidence of McDowell merely shows that this 218 acres was well defined, and that its northern, eastern, and southern lines were bounded by tracts of land known by the names given in the lease. The western boundary of the 109 acres, however, is not given by any witness; nor is there anything in the evidence from which it can be constructed.

Taking all of the testimony, whether admitted or excluded, the only inference that can be drawn from it is that it presents no possible method by which the 109 acres purporting to be leased can be identified, and for that reason the lease is void. The judgment of the trial court is affirmed.

Affirmed.